John Robertelli, Esq.
RIVKIN RADLER LLP
21 Main Street, Suite 158
Court Plaza South, West Wing
Hackensack, New Jersey 07601
(201) 287-2460
*Attorneys for Plaintiffs Government*
*Employees Insurance Co., GEICO*
*Indemnity Co., GEICO General Insurance*
*Company and GEICO Casualty Co.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., GEICO INDEMNITY CO., GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY CO., | Case No.:             (    ) |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| REHAN ZUBERI, HUMARA T. PARACHA, NAWAB H. ZUBERI, ROHIT GUPTA, FAISAL L. PARACHA, SALMAN SIDDIQUI,  DIAGNOSTIC IMAGING AFFILIATES LIMITED LIABILITY COMPANY, MEDIMAX BILLING SERVICES, LLC, MEDICAL & MOLECULAR IMAGING INC., AMERICAN IMAGING OF EDISON LLC, AMERICAN IMAGING CENTER OF WEST ORANGE, LLC, AMERICAN IMAGING CENTER OF WAYNE INC., and THE IMAGING CENTER AT MONTVILLE, LLC, | Plaintiffs Demand a Trial by Jury |
| Defendants. | |

## COMPLAINT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

## INTRODUCTION

1.    This action seeks to recover more than $799,000.00 that the Defendants wrongfully obtained from GEICO by submitting, and causing to be submitted, hundreds of fraudulent charges relating to unreimbursable and medically unnecessary radiology services including, but not limited to, magnetic resonance imaging ("MRI"), computerized axial tomography (CAT scan), positron emission tomography (PET scan), and x-rays (collectively the "Fraudulent Services").

2.    The Fraudulent Services purportedly were provided to individuals ("Insureds") who claimed to have been involved in automobile accidents and were eligible for insurance coverage under GEICO automobile insurance policies.

3.    In addition, GEICO seeks a declaration that it is not obligated to pay more than $1,000,000.00 in pending fraudulent claims seeking payment for the Fraudulent Services that have been submitted or caused to be submitted by the Defendants through Medical & Molecular Imaging Inc. ("MMI"), American Imaging of Edison LLC ("AIE"), American Imaging Center of West Orange, LLC ("AICWO"), American Imaging Center of Wayne Inc. ("AICW"), and The Imaging Center at Montville, LLC ("ICAM") (collectively the "Provider Defendants") because:

(i)    the Provider Defendants are not eligible to receive payment for the Fraudulent Services because the Provider Defendants were not in compliance with all significant qualifying requirements of law that bore upon the rendition of the Fraudulent Services;

(ii)    the Provider Defendants are not eligible to receive payment for the Fraudulent Services because the Fraudulent Services were not provided in compliance with all significant qualifying requirements of law that bore upon the rendition of the Fraudulent Services; and

(iii)    the Fraudulent Services were not medically necessary, and were performed – to the extent that they were performed at all – pursuant to a complex, illegal kickback scheme designed solely to financially enrich the Defendants.

4.    The Defendants fall into the following categories:

(i)    The Provider Defendants are unlawfully organized and fraudulently licensed New Jersey "ambulatory care facilities", as that term is defined under N.J.A.C. 8:43A-1.3, through which the Fraudulent Services purportedly were performed and were billed to insurance companies, including GEICO.

(ii)    Defendant Diagnostic Imaging Affiliates Limited Liability Company ("DIA") is a New Jersey limited liability company that was organized to facilitate the unlawful ownership and control of the Provider Defendants.

(iii)    Defendant Medimax Billing Services, LLC ("Medimax") is a New Jersey limited liability company that purported to provide billing services to the Provider Defendants, but in actuality was organized to unlawfully obtain payment for the Fraudulent Services from GEICO and other automobile insurance companies.

(iv)    Defendants Rehan Zuberi ("Zuberi"), Humara T. Paracha ("H. Paracha"), Nawab H. Zuberi ("N. Zuberi"), Rohit Gupta ("Gupta"), Faisal L. Paracha ("F. Paracha"), and Salman Siddiqui ("Siddiqui") (collectively, with DIA and Medimax, the "Management Defendants") are individuals who were associated with DIA, Medimax, and the Provider Defendants, and caused fraudulent billing for the Fraudulent Services to be submitted through the Provider Defendants to insurance companies, including GEICO.

5.    The Defendants at all relevant times have known that:

(i)    the Provider Defendants were not eligible to receive payment for the Fraudulent Services because the Provider Defendants were not in compliance with all significant qualifying requirements of law that bore upon the rendition of the Fraudulent Services;

(ii)    the Provider Defendants were not eligible to receive payment for the Fraudulent Services because the Fraudulent Services were not provided in compliance with all significant qualifying requirements of law that bore upon the rendition of the Fraudulent Services; and

(iii)    the Fraudulent Services were not medically necessary, and were performed – to the extent that they were performed at all – pursuant to a complex, illegal kickback scheme designed solely to financially enrich the Defendants.

6.    As such, the Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that were billed to GEICO through the Provider Defendants.

7.    The charts annexed hereto as Exhibits "1" – "5" set forth a representative sample of the fraudulent claims that have been identified to-date that the Defendants submitted, or caused to be submitted, to GEICO.

8.    The Defendants' fraudulent scheme began as early as 2003 and has continued uninterrupted since that time. As a result of the Defendants' scheme, GEICO has incurred damages of more than $799,000.00.

## THE PARTIES

### I.    Plaintiffs

9.    Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. are Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in New Jersey.

### II.    Defendants

### A.    The Provider Defendants

10.    Defendant AICWO is a fraudulently licensed New Jersey limited liability company and ambulatory care facility with its principal place of business in New Jersey. AICWO was fraudulently organized on September 26, 2003, is nominally owned and controlled

on paper by F. Paracha, but in actuality has always been secretly and unlawfully owned and controlled by Zuberi and DIA.

11.     Defendant ICAM is a fraudulently licensed New Jersey limited liability company and ambulatory care facility with its principal place of business in New Jersey. ICAM was fraudulently organized on January 20, 2005, is nominally owned and controlled on paper by Siddiqui, but in actuality has always been secretly and unlawfully owned and controlled by Zuberi and DIA.

12.     Defendant MMI is a fraudulently licensed New Jersey corporation and ambulatory care facility with its principal place of business in New Jersey. MMI was fraudulently organized on November 11, 2008, is nominally owned and controlled on paper by H. Paracha, but in actuality has always been secretly and unlawfully owned and controlled by Zuberi and DIA.

13.     Defendant AICW is a fraudulently licensed New Jersey corporation and ambulatory care facility with its principal place of business in New Jersey. AICW was fraudulently incorporated on January 4, 2010 as Medical and Molecular Imaging Wayne Inc., is nominally owned and controlled on paper by H. Paracha, but in actuality has always been secretly and unlawfully owned and controlled by Zuberi and DIA.

14.     Defendant AIE is a fraudulently licensed New Jersey limited liability company and ambulatory care facility with its principal place of business in New Jersey. AIE was fraudulently organized on January 14, 2011 as Medical and Molecular Imaging Edison LLC. ("MMIE"), is nominally owned and controlled on paper by H. Paracha and Gupta, but in actuality has always been secretly and unlawfully owned and controlled by Zuberi and DIA.

**B.**    **The Management Defendants**

**1.**    **DIA**

15.    Defendant DIA is a New Jersey limited liability company with its principal place of business in New Jersey. DIA was fraudulently organized on May 15, 2007, is nominally owned and controlled on paper by H. Paracha and N. Zuberi, but in actuality has always been owned and controlled by Zuberi.

16.    DIA was used by Zuberi, H. Paracha, and N. Zuberi has a holding company to facilitate Zuberi's unlawful ownership and control of the Provider Defendants, while simultaneously concealing Zuberi's unlawful ownership and control of the Provider Defendants.

**2.**    **Medimax**

17.    Defendant Medimax is a New Jersey limited liability company with its principal place of business in New Jersey. Medimax was organized on January 7, 2008, is nominally owned and controlled on paper by Gupta, but in actuality has always been owned and controlled by Zuberi.

18.    Medimax was used by Zuberi and Gupta as a vehicle to submit fraudulent billing for the Fraudulent Services to GEICO and other insurers.

**3.**    **Zuberi**

19.    Defendant Zuberi resides in and is a citizen of New Jersey. Zuberi unlawfully owned and controlled DIA and the Provider Defendants.

20.    In 1998, Zuberi was convicted of second degree theft by deception in violation of N.J.S.A. 2C-20-4, 2C:2-6 and 2C:2-7, as well as second degree financial facilitation of criminal activity in violation of N.J.S.A. 2C:21-25b, 2C:2-6 and 2C:2-7, in connection with his participation in a scheme to defraud New Jersey Medicaid of millions of dollars.

21.     As a result of his conviction, Zuberi was sentenced to six years in prison and was debarred from the Medicaid program.

22.     On or about June 19, 2014, Zuberi was arrested and charged with first-degree racketeering, among other charges, in connection with his role as owner of DIA and the Provider Defendants. Specifically, Zuberi was charged with leading a criminal enterprise consisting of – among other things – DIA and the Provider Defendants, that provided hundreds of thousands of dollars in illegal kickbacks to healthcare services providers in exchange for patient referrals to the Provider Defendants and other entities he owned and controlled.

**4.     H. Paracha**

23.     Defendant H. Paracha resides in  and is a citizen of New Jersey. H. Paracha is Zuberi's wife.

24.     On or about June 19, 2014, H. Paracha was arrested and charged with first-degree racketeering, among other charges, in connection with her role in the scheme alleged herein.

**5.     N. Zuberi**

25.     Defendant N. Zuberi resides in and is a citizen of New Jersey. N. Zuberi is Zuberi's father.

26.     On or about June 19, 2014, N. Zuberi was arrested and charged with second degree misconduct by a corporate official, among other charges, in connection with his role in the scheme alleged herein.

**6.     Gupta**

27.     Defendant Gupta resides in and is a citizen of New Jersey.

28.     On or about June 19, 2014, Gupta was arrested and charged with first-degree racketeering, among other charges, in connection with his role in the scheme alleged herein.

7.    **F. Paracha**

29.    Defendant F. Paracha resides in and is a citizen of New Jersey. F. Paracha is Zuberi's brother-in-law and H. Paracha's brother.

30.    On or about June 19, 2014, F. Paracha was arrested and charged with first-degree racketeering, among other charges, in connection with his role in the scheme alleged herein.

8.    **Siddiqui**

31.    Defendant Siddiqui resides in and is a citizen of New Jersey. Siddiqui is Zuberi's brother-in-law.

32.    On or about June 19, 2014, Siddiqui was arrested and charged within second-degree financial facilitation in connection with his role in the scheme alleged herein.

## JURISDICTION AND VENUE

33.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

34.    Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act) because they arise under the laws of the United States.

35.    In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

36.    Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the District of New Jersey is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

### I.     An Overview of Pertinent New Jersey Law

37.     GEICO underwrites automobile insurance in New Jersey.

38.     New Jersey has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is embodied within the Compulsory Insurance Law (N.J.S.A. 39:6B-1 to 3) and the Automobile Reparation Reform Act (N.J.S.A. 39:6A-1 et seq.) (collectively referred to as the "No Fault Laws"), which require automobile insurers to provide Personal Injury Protection Benefits ("PIP Benefits") to Insureds.

39.     Under the No Fault Laws, an Insured is entitled to up to $250,000.00 in PIP Benefits for medically necessary healthcare services. An Insured can assign his or her right to PIP Benefits to healthcare services providers, including chiropractors, in exchange for those services. Pursuant to a duly executed assignment, a healthcare services provider may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form").

### A.     Compliance With New Jersey Law and PIP Reimbursement

40.     In order for a healthcare services provider to be eligible to receive PIP Benefits, it must comply with all relevant laws and regulations governing healthcare practice in New Jersey.

41.     Thus, a healthcare services provider is not entitled to receive PIP Benefits where it has failed to comply with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, whether or not the underlying services were medically necessary. See, e.g., Liberty Mut. Ins. Co. v. Healthcare Integrated Servs., 2009 N.J. Super.

Unpub. LEXIS 2416 at * 4 - * 5 (App. Div. 2009)("This court has held that a provider of such services is not entitled to reimbursement for services covered by PIP unless the provider and the services are in compliance with relevant laws and regulations."); Varano, Damian & Finkel, L.L.C. v. Allstate Ins. Co., 366 N.J. Super. 1, 6 (App. Div. 2004)(a healthcare services provider operated in violation of pertinent regulatory standards "is not eligible to receive PIP benefits."); Allstate Ins. Co. v. Orthopedic Evaluations, Inc., 300 N.J. Super. 510, 515-519 (App. Div. 1997)(healthcare services provider's lack of compliance with pertinent regulatory standards rendered it ineligible to collect PIP Benefits, whether or not the underlying services were medically necessary); Allstate v. Greenberg, supra, 376 N.J. Super at 632 ("A medical services provider's failure to comply with the standards promulgated by the Board of Medical Examiners make it ineligible to receive PIP reimbursement."); Allstate Ins. Co. v. Schick, 328 N.J. Super. 611, 620 (1999)("[A]n insurer may properly deny PIP benefits under the No Fault Law based upon a healthcare provider's failure to comply with the administrative regulations governing the practice of healthcare in this State.")

42.    Moreover, in order for a specific healthcare service to be eligible for PIP reimbursement, the service itself must be provided in compliance with all relevant laws and regulations governing healthcare practice in New Jersey. See, e.g., Healthcare Integrated Servs., supra; Orthopedic Evaluations, Inc., supra.

43.    By extension, insurers such as GEICO are not obligated to make any payments of PIP Benefits to healthcare services providers that are not in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey.

44.     Furthermore, insurers such as GEICO are not obligated to make any payments of PIP Benefits for healthcare services that are not rendered in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey.

**B.     Ownership and Licensing of Ambulatory Care Facilities**

45.     N.J.A.C. 8:43A-1.3 provides that:

"Ambulatory care facility" means a health care facility or a distinct part of a health care facility in which preventive, diagnostic, and treatment services are provided to persons who come to the facility to receive services and depart from the facility on the same day"

46.     Pursuant to N.J.S.A. § 26:2H-12, a health care service or health care facility such as the Provider Defendants that intends to provide MRI or CAT scans must obtain an ambulatory care facility license from the New Jersey Department of Health and Senior Services ("DHSS").

47.     As part of the licensing process, an applicant for an ambulatory care facility license is legally required to disclose the ownership of the facility and the property on which it is located to DHSS. See N.J.A.C. 8:43A-3.3(a).

48.     N.J.A.C. 8:43A-3.3(b) provides that:

No facility shall be owned, managed, or operated by any person convicted of a crime relating adversely to the person's capability of owning, managing, or operating the facility.

49.     Therefore, ambulatory care facilities that secretly and illegally are owned or controlled by persons who have been convicted of crimes relating adversely to their capability of owning, managing, or operating the facility are not eligible to receive PIP Benefits.

**C.     Relevant Anti-Kickback Provisions**

50.     Pursuant to N.J.A.C. 13:35-6.17, physicians are prohibited from paying or receiving kickbacks, either directly or indirectly, for patient referrals.

51.    Among other things, N.J.A.C. 13:35-6.17(c)(1) specifies that:

A licensee shall not, directly or indirectly, give to or receive from any licensed or unlicensed source a gift of more than nominal (negligible) value, or any fee, commission, rebate or bonus or other compensation however denominated, which a reasonable person would recognize as having been given or received in appreciation for or to promote conduct by a licensee including: purchasing a medical product, ordering or promoting the sale or lease of a device or appliance or other prescribed item, prescribing any type of item or product for patient use or making or receiving a referral to or from another for professional services. For example, a licensee who refers a patient to a health care service (such as a cardiac rehabilitation service or a provider of durable medical equipment or a provider of testing services) shall not accept from nor give to the health care service a fee directly or indirectly in connection with the referral, whether denominated as a referral or prescription fee or examinationing or supervision fee or space leasing in which to render the services (other than as permitted in (h) below), or by any other name ... .

(Emphasis added).

52.    N.J.A.C. 13:35-6.17(c)(1)(ii) specifies that "[t]his section shall be construed broadly to effectuate its remedial intent."

53.    Similarly, pursuant to N.J.A.C. 13:44-E-2.6, chiropractors are prohibited from paying or receiving kickbacks, either directly or indirectly, in exchange for patient referrals.

54.    Pursuant to N.J.A.C. 8:43A-3.2, ambulatory care facilities are required to comply with applicable state laws and regulations, including the laws and regulations prohibiting the payment of kickbacks in exchange for patient referrals.

55.    Therefore, ambulatory care facilities that pay illegal kickbacks in exchange for patient referrals are not eligible to receive PIP Benefits.

**D.    Medical Necessity and PIP Reimbursement**

56.    Pursuant to N.J.S.A. 39:6A-4, an insurer such as GEICO is only required to pay PIP Benefits for reasonable, necessary, and appropriate treatment. Concomitantly, a healthcare services provider is only eligible to receive PIP Benefits for medically necessary services.

57.    Pursuant to N.J.S.A. 39:6A-2(m):

"Medically necessary" means that the treatment is consistent with the symptoms or diagnosis, and treatment of the injury

(1)    is not primarily for the convenience of the injured person or provider,

(2)    is the most appropriate standard or level of service which is in accordance with standards of good practice and standard professional treatment protocols, as such protocols may be recognized or designated by the Commissioner of Banking and Insurance, in consultation with the Commissioner of Health and Senior Services or with a professional licensing or certifying board in the Division of Consumer Affairs in the Department of Law and Public Safety, or by a nationally recognized professional organization, and

(3)    does not involve unnecessary diagnostic testing.

58.    Accordingly, healthcare services that are provided pursuant to illegal kickback schemes are – by definition – not "medically necessary", because they are not provided "in accordance with standards of good practice and standard professional treatment protocols", including the New Jersey State Board of Chiropractic Examiners' and the New Jersey State Board of Medical Examiners' regulations against paying or receiving compensation in exchange for patient referrals.

59.    New Jersey has established a medical fee schedule (the "Fee Schedule") that is applicable to claims for PIP Benefits. When a healthcare services provider submits a claim for PIP Benefits using the current procedural terminology ("CPT") codes set forth in the Fee Schedule, it represents that: (i) the service described by the specific CPT code that is used was performed in a competent manner in accordance with applicable regulations; (ii) the service described by the specific CPT code that is used was reasonable and medically necessary; and (iii) the service and the attendant fee were not excessive.

**E.    The New Jersey Insurance Fraud Prevention Act**

60.    New Jersey has a strong public policy against insurance fraud. This policy is manifested in a series of statutes, including the Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq. (the "IFPA"). The IFPA provides that insurance claim forms submitted by a healthcare provider to GEICO, and all other insurers, must be verified by the healthcare provider subject to the following warning:

> Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

See N.J.S.A. 17:33A-6(a).

61.    A person violates the IFPA if, among other things, it:

(i)      presents or causes to be presented any written or oral statement as part of, or in support of or opposition to a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim;

(ii)     prepares or makes any written or oral statement that is intended to be presented to any insurance company or any insurance claimant in connection with, or in support of or in opposition to any claims for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(iii)    conceals or knowingly fails to disclose the occurrence of an event which affects a person's initial or continued right or entitlement to (a) any insurance benefits or payment or (b) the amount of any benefit or payment to which the person is entitled.

See N.J.S.A. 17:33A-4.

62.    A person also violates the IFPA if it either: (i) "knowingly assists, conspires with or urges any person or practitioner to violate any of provisions of this act"; or (ii) "knowingly benefits, directly or indirectly, from the proceeds derived from a violation of this act." See N.J.S.A. 17:33A-4.

63.     Violators of the IFPA are liable to the insurer for restitution, attorney's fees, and the reasonable costs of the insurer's investigation. See N.J.S.A 17:33A-7(a).

64.     A person that engages in a pattern of fraudulent behavior under the IFPA is liable to the insurer for treble damages. See N.J.S.A. 17:33A-7(b).

65.     The IFPA defines a pattern as five or more "related violations". See N.J.S.A. 17:33A-3. Violations are related if they involve either the same victim, or same or similar actions on the part of the person or practitioner charged with violating the IFPA. See N.J.S.A.17:33A-3.

## II.     The Defendants' Fraudulent Scheme

## A.     The Provider Defendants' Illegal Corporate Structure

66.     The Provider Defendants are, or purport to be, ambulatory care facilities.

67.     Therefore, pursuant to New Jersey law, Zuberi could not lawfully own, manage, or operate the Provider Defendants, because his criminal convictions for his participation in the New Jersey Medicaid fraud scheme related adversely to his capability of owning, managing, or operating such facilities. See N.J.A.C. 8:43A-3.3(b).

68.     Zuberi knew that he could not lawfully own, manage, or operate any ambulatory care facilities in New Jersey, because his criminal convictions for his participation in the New Jersey Medicaid fraud scheme related adversely to his capability of owning, managing, or operating such facilities. See N.J.A.C. 8:43A-3.3(b).

69.     Accordingly, beginning in or about 2003, Zuberi, H. Paracha, F. Paracha, N. Zuberi, and Siddiqui embarked on a secret scheme whereby – in exchange for compensation from Zuberi – H. Paracha, F. Paracha, N. Zuberi, and Siddiqui agreed to falsely represent in corporate filings and DHSS licensing applications that they owned and controlled the Provider

15

Defendants, while in actuality ceding true ownership and control over the Provider Defendants to Zuberi.

70.    At all relevant times, Zuberi – either directly or through DIA – has unlawfully owned, managed, and operated the Provider Defendants.

71.    Even so, on September 26, 2003, Zuberi and F. Paracha filed, or caused to be filed, a certificate of formation for AICWO with the New Jersey Department of the Treasury which fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over AICWO.

72.    Then, in or about early 2003, Zuberi and F. Paracha filed, or caused to be filed, an ambulatory care facility licensing application with the DHSS which falsely represented that F. Paracha owned AICWO, and fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over AICWO.

73.    Thereafter, on January 20, 2005, Zuberi and Siddiqui filed, or caused to be filed, a certificate of formation for ICAM with the New Jersey Department of the Treasury which fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over ICAM.

74.    Subsequently, in or about early 2005, Zuberi and Siddiqui filed, or caused to be filed, an ambulatory care facility licensing application with the DHSS which falsely represented that Siddiqui owned ICAM, and fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over ICAM.

75.    Thereafter, on November 11, 2008, Zuberi and H. Paracha filed, or caused to be filed, a certificate of incorporation with the New Jersey Department of the Treasury which

falsely represented that H. Paracha was MMI's sole incorporator and sole director, and fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over MMI.

76.    Then, upon information and belief, in late 2008 Zuberi and H. Paracha filed, or caused to be filed, an ambulatory care facility licensing application with the DHSS which falsely represented that H. Paracha owned MMI, and fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over MMI.

77.    Subsequently, on January 4, 2010, Zuberi and H. Paracha filed, or caused to be filed, a certificate of incorporation with the New Jersey Department of the Treasury which falsely represented that H. Paracha was AICW's sole incorporator and sole director, and fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over AICW.

78.    Thereafter, in or about early 2010, Zuberi and H. Paracha filed, or caused to be filed, an ambulatory care facility licensing application with the DHSS which falsely represented that H. Paracha owned AICW, and fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over AICW.

79.    Then, on January 14, 2011, Zuberi, H. Paracha, and Gupta filed, or caused to be filed, a certificate of formation with the New Jersey Department of the Treasury which falsely represented that H. Paracha and Gupta were AIE's sole members and owners, and fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over AIE.

80.    Then, in or about late 2012, Zuberi, H. Paracha, and Gupta filed, or caused to be filed, an ambulatory care facility licensing application with the DHSS which falsely represented that Gupta owned AIE, and fraudulently concealed Zuberi's secret and unlawful ownership interest in and control over AIE.

81.     In early 2007, Zuberi sought to consolidate his growing empire of illegally owned and fraudulently-licensed ambulatory care facilities, so as to further facilitate Zuberi's illegal ownership interests in and control over the Provider Defendants, and simultaneously further conceal Zuberi's illegal ownership interests in and control over the Provider Defendants.

82.     Toward that end, on May 15, 2007, Zuberi, H. Paracha, and N. Zuberi fraudulently organized DIA by filing, or causing to be filed, a certificate of formation with the New Jersey Department of the Treasury which falsely represented that H. Paracha and N. Zuberi were DIA's sole members and owners, and fraudulently concealed Zuberi's secret ownership interest in and control over DIA.

83.     Then, on January 7, 2008, Zuberi and Gupta organized Medimax.

84.     Thereafter, to further facilitate Zuberi's illegal ownership interests in and control over the Provider Defendants, and simultaneously further conceal Zuberi's illegal ownership interests in and control over the Provider Defendants, Zuberi caused the Provider Defendants to enter into a series of "management", "marketing", and "billing" agreements with DIA and Medimax.

85.     These agreements called for exorbitant payments from the Provider Defendants to DIA and Medimax for the alleged performance of certain designated services including management, marketing, billing, and collections, regardless of: (i) the volume of the Provider Defendants' business; or (ii) the income generated by the Provider Defendants.

86.     While these agreements ostensibly were created to permit DIA and Medimax to provide "management," "billing," and "marketing," services, they actually were used solely as a tool to permit Zuberi to: (i) illegally control the day-to-day operations, exercise supervisory

authority over, and own the Provider Defendants; and (ii) to siphon all of the profits that were generated by the billings submitted to GEICO and other insurers through the Provider Defendants.

**B.     The Illegal Kickbacks**

87.     The ability of the Defendants to bill GEICO and other New Jersey automobile insurers for the Fraudulent Services they purported to provide depended on the Provider Defendants' ability to gain access to Insureds.

88.     Accordingly, the Management Defendants entered into a secret scheme with various chiropractors and physicians in New Jersey (the "Referral Sources"), whereby the Management Defendants agreed to pay kickbacks to the Referral Sources in exchange for large numbers of patient referrals to the Provider Defendants.

89.     The Referral Sources included, among others, the following individuals:

(i)      Alexander G. Salerno, M.D.;

(ii)     Simon B. Santos-Arias, M.D.;

(iii)    Michael L. Gross, M.D.;

(iv)     James W. Cahill, M.D.;

(v)      William M. Steck, M.D.;

(vi)     Alan P. Epstein, D.C.; and

(vii)    Guillermo A. Munoz, M.D.

90.     The amount of the kickbacks that the Management Defendants paid to the Referral Sources was based upon the volume of Insureds that the Referral Sources referred to the Provider Defendants.

91.     The Management Defendants effectuated the kickbacks by issuing checks drawn from a DIA bank account, by routing the kickbacks through shell corporations and phony

"charities", by disguising the kickbacks as ostensibly-legitimate fees to "rent" space from the Referral Sources, and by providing the kickbacks in the form of gift cards for luxury retailers

92.     In exchange for kickbacks from the Management Defendants, Insureds were routinely referred to the Provider Defendants by the Referral Sources regardless of the Insureds' individual symptoms, presentment, or – in many cases – the total absence of any medical problems arising from any automobile accident.

93.     The kickbacks that the Management Defendants paid to the Referral Sources were a pervasive aspect of the Provider Defendants' illegal business model.

94.     For instance, between 2008 and 2013, the Management Defendants provided at least $300,000.00 in kickbacks to the Referral Sources, in exchange for which the Referral Sources made thousands of illegal referrals to the Provider Defendants.

95.     The unlawful kickback relationships that the Management Defendants established with the Referral Sources were essential to the success of the Defendants' fraudulent scheme.

96.     The Management Defendants derived significant financial benefit from the relationships because without the access to the Insureds provided by the Referral Sources, the Provider Defendants would not have had the ability to implement their fraudulent diagnostic testing and billing protocol, bill automobile insurers, including GEICO, or generate income from insurance claim payments.

97.     The Referral Sources likewise benefitted from their unlawful kickback relationships with the Provider Defendants, because of the direct financial benefit conferred by the kickbacks themselves.

C.    **The Arrests of the Defendants and Several of the Referral Sources, and Zuberi and H. Paracha's Guilty Pleas**

98.    On or about June 14, 2014, Zuberi, H. Paracha, Gupta, F. Paracha, N. Zuberi, and Siddiqui – among others – were arrested and charged in connection with the Defendants' fraudulent scheme.

99.    In a release announcing the arrests, acting New Jersey Attorney General John J. Hoffman stated, among other things, that:

(i)    After Zuberi was released from prison following his criminal convictions in 1998, he colluded with H. Paracha, Gupta, F. Paracha, N. Zuberi, and Siddiqui – among others – to serve as nominal or "paper" owners of the Provider Defendants and other fraudulently organized and licensed ambulatory care facilities, and to submit more than 30 fraudulent licensing applications to DHSS that, among other things, misrepresented and concealed Zuberi's illegal ownership interests in the Provider Defendants.

(ii)    DIA was owned by Zuberi and was used by Zuberi to manage the Provider Defendants as a criminal enterprise.

(iii)    At Zuberi's direction, the enterprise paid more than $300,000.00 in illegal kickbacks to healthcare services providers in exchange for patient referrals for expensive radiology services. The kickbacks were paid using checks from "shell" corporations created by Zuberi's criminal enterprise and gift cards/certificates. The enterprise also disguised the payment of kickbacks by providing doctors with services (e.g., patient transportation).

100.    On or about October 16, 2014, seven physicians and chiropractors who allegedly referred patients to various of the ambulatory care facilities that Zuberi secretly and unlawfully owned and controlled – including, upon information and belief, the Provider Defendants – were arrested.

101.    In a release announcing the arrests, acting New Jersey Attorney General John J. Hoffman indicated, among other things, that:

(i)    Between 2008 and 2013, in exchange for more than $200,000.00 in kickbacks from DIA, the physicians and chiropractors made more than 20,000 referrals to

ambulatory care facilities that Zuberi secretly and unlawfully owned and controlled.

(ii)    Zuberi and his criminal enterprise went to considerable lengths to conceal the illegal kickbacks, by – among other things – routing the kickbacks through shell corporations, phony "charities", by disguising the kickbacks as ostensibly-legitimate fees to "rent" space from the physicians and chiropractors, and by providing the kickbacks in the form of gift cards for luxury retailers.

102.    On May 11, 2015, Zuberi pleaded guilty to first-degree financial facilitation of criminal activity and second-degree conspiracy to commit commercial bribery in connection with the Defendants' fraudulent scheme.

103.    The plea agreement calls for Zuberi to receive a 10-year prison sentence with a four-year parole non-eligibility period.

104.    In connection with his guilty plea, Zuberi admitted that he provided thousands of kickbacks totalling millions of dollars in exchange for referrals to the Provider Defendants, including referrals for medically unnecessary Fraudulent Services.

105.    That same day, H. Paracha pleaded guilty to third-degree conspiracy to commit commercial bribery in connection with the Defendants' fraudulent scheme.

**D.    The Fraudulent Billing the Defendants Submitted or Caused to be Submitted to GEICO**

106.    To support their fraudulent charges for the claims identified in Exhibits "1" – "5", the Defendants systematically submitted or caused to be submitted hundreds of HCFA-1500 forms and treatment reports through the Provider Defendants to GEICO encompassing thousands of charges for the Fraudulent Services for which the Defendants were not entitled to receive payment.

107.    As described above, the HCFA-1500 forms and treatment reports were false and misleading, and in violation of the Insurance Fraud Prevention Act, in the following material respects:

(i)     The HCFA-1500 forms and treatment reports with respect to the claims identified in Exhibits "1" – "5" uniformly misrepresented to GEICO that the Provider Defendants were in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, and therefore were eligible to receive PIP reimbursement. In fact, the Provider Defendants were not in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, and were not eligible to receive PIP reimbursement, because they were secretly and unlawfully owned and controlled by Zuberi, whose criminal convictions barred him from owning or controlling the Provider Defendants, and because they paid illegal kickbacks to the Referral Sources in exchange for patient referrals.

(ii)    The HCFA-1500 forms and treatment reports identified in Exhibits "1" – "5" uniformly misrepresented to GEICO that the underlying Fraudulent Services were provided in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, were medically necessary, and therefore were eligible for PIP reimbursement. In fact, the Fraudulent Services were not provided in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, were not medically necessary, and were not eligible for PIP reimbursement, because the Fraudulent Services were provided through the Provider Defendants, which ssecrelt and unlawfully were owned and controlled by Zuberi, and because the Fraudulent Services were provided – to the extent that they were provided at all – pursuant to the Defendants' illegal kickback scheme.

## III.    GEICO's Justifiable Reliance

108.    The Defendants legally and ethically were obligated to act honestly and with integrity in connection with the billing that they submitted, or caused to be submitted, to GEICO.

109.    To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, the Defendants systemically concealed their fraud and went to great lengths to accomplish this concealment.

110.    Specifically, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Provider Defendants were illegally owned and controlled by Zuberi, who was not eligible to own, manage, or operate ambulatory care facilities.

111.    What is more, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary and were performed pursuant to a complex kickback scheme designed to maximize the charges that could be submitted, not to benefit the Insureds who supposedly were subjected to them.

112.    The Management Defendants and Provider Defendants hired law firms to pursue collection of the fraudulent charges from GEICO and other insurers. These law firms routinely filed expensive and time-consuming arbitration and litigation against GEICO and other insurers if the charges were not promptly paid in full.

113.    GEICO is under statutory and contractual obligations to promptly and fairly process claims. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and omissions described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $799,000.00 based upon the fraudulent charges representing payments made by GEICO to the Provider Defendants.

114.    Based upon the Defendants' material misrepresentations, omissions, and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

## FIRST CAUSE OF ACTION
### Against the Provider Defendants
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

115.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 114 above.

116.    There is an actual case in controversy between GEICO and the Provider Defendants regarding more than $1,000,000.00 in pending fraudulent billing for the Fraudulent Services that has been submitted to GEICO.

117.    The Provider Defendants have no right to receive payment for any pending and unpaid bills submitted to GEICO because the Provider Defendants were not in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, and were not eligible to receive PIP reimbursement, because they secretly and unlawfully were owned, managed, and operated by Zuberi, who was not legally eligible to own, manage, or operate ambulatory care facilities, and because they paid illegal kickbacks in exchange for patient referrals.

118.    The Provider Defendants have no right to receive payment for any pending and unpaid bills submitted to GEICO because the underlying Fraudulent Services were not provided in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, were not medically necessary, and were not eligible for PIP reimbursement, because the Fraudulent Services were provided through the Provider Defendants, which secretly and unlawfully were owned, managed, and operated by Zuberi, who was not legally eligible to own, manage, or operate ambulatory care facilities, and because the Fraudulent Services were provided pursuant to illegal kickbacks.

119.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the Provider Defendants have no right to receive payment for any pending bills submitted to GEICO.

**SECOND CAUSE OF ACTION**
**Against all of the Defendants**
**(Violation of New Jersey Insurance Fraud Prevention Act – (N.J.S.A.17:33A-1 et seq.))**

120.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 119 above.

121.    In connection with the billing that they submitted or caused to be submitted to GEICO for the Fraudulent Services in the claims identified in Exhibits "1" – "5", the Defendants knowingly submitted or caused to be submitted HCFA-1500 forms and treatment reports to GEICO that were false and misleading in the following material respects:

(i)     The HCFA-1500 forms and treatment reports with respect to the claims identified in Exhibits "1" – "5" uniformly misrepresented to GEICO that the Provider Defendants were in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, and therefore were eligible to receive PIP reimbursement. In fact, the Provider Defendants were not in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, and were not eligible to receive PIP reimbursement, because they were secretly and unlawfully owned and controlled by Zuberi, whose criminal convictions barred him from owning or controlling the Provider Defendants, and because they paid illegal kickbacks to the Referral Sources in exchange for patient referrals.

(ii)    The HCFA-1500 forms and treatment reports identified in Exhibits "1" – "5" uniformly misrepresented to GEICO that the underlying Fraudulent Services were provided in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, were medically necessary, and therefore were eligible for PIP reimbursement. In fact, the Fraudulent Services were not provided in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, were not medically necessary, and were not eligible for PIP reimbursement, because the Fraudulent Services were provided through the Provider Defendants, which ssecrelt and unlawfully were owned and controlled by Zuberi, and because the Fraudulent Services were provided – to the extent that they were provided at all – pursuant to the Defendants' illegal kickback scheme.

26

122.    The Defendants' systemic violation of the New Jersey Insurance Fraud Prevention Act constitutes a "pattern" of violations under the Act. See N.J.S.A. 17:33-A-7. As a result, GEICO is entitled to not only damages in the form of disgorgement of the PIP benefits paid in an amount to be established at trial, but exceeding $799,000.00, but is also entitled to: (i) treble damages; (ii) the costs and counsel fees incurred in connection with the investigation conducted by GEICO; as well as (iii) reimbursement of the costs and counsel fees associated with the prosecution of this litigation.

### THIRD CAUSE OF ACTION
**Against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

123.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 122 above.

124.    Medical & Molecular Imaging Inc. is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

125.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knowingly have conducted and/or participated, directly or indirectly, in the conduct of MMI's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than four years seeking payments that MMI was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent charges and corresponding mailings submitted to GEICO that

comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

126.   MMI's business was racketeering activity, inasmuch as the enterprise never was eligible to bill for or to collect PIP Benefits, and existed for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud were the regular way in which Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax operated MMI, inasmuch as MMI was not engaged in a legitimate medical practice, and acts of mail fraud therefore were essential in order for MMI to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

127.   MMI is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by MMI in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

128.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $196,196.05 pursuant to the fraudulent bills submitted through MMI.

129.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax
### (Violation of RICO, 18 U.S.C. § 1962(d))

130.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 129 above.

131.    Medical & Molecular Imaging Inc. is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

132.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax are employed by and/or associated with the MMI enterprise.

133.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knowingly have agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of the MMI enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than four years seeking payments that MMI was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

134.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knew of, agreed to, and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other

insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

135.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $196,196.05 pursuant to the fraudulent bills submitted through MMI.

## FIFTH CAUSE OF ACTION
### Against MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax
### (Common Law Fraud)

136.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 135 above.

137.    MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills seeking payment for the Fraudulent Services.

138.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that MMI was lawfully eligible to bill for or to collect PIP Benefits, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not; and (iii) in every claim, concealment of the fact that the Fraudulent Services were performed, to the extent that they were performed at all, pursuant to illegal kickbacks.

139.    MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through MMI that were not compensable under New Jersey's No-Fault Laws.

140.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $196,196.05 pursuant to the fraudulent bills submitted by MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax through MMI.

141.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

142.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### Against MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax
### (Unjust Enrichment)

143.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 142 above.

144.    As set forth above, MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

145.    When GEICO paid the bills and charges submitted or caused to be submitted by MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax for PIP Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

146.    MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that MMI,

Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

147.    The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

148.    By reason of the above, MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have been unjustly enriched in an amount to be determined at trial, but in no event less than $196,196.05.

## SEVENTH CAUSE OF ACTION
### Against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax
### (Violation of RICO, 18 U.S.C. § 1962(c))

149.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 148 above.

150.    American Imaging of Edison LLC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

151.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knowingly have conducted and/or participated, directly or indirectly, in the conduct of AIE's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than 18 months seeking payments that AIE was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent charges and corresponding mailings submitted to GEICO that

comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

152.    AIE's business was racketeering activity, inasmuch as the enterprise never was eligible to bill for or to collect PIP Benefits, and existed for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud were the regular way in which Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax operated AIE, inasmuch as AIE was not engaged in a legitimate medical practice, and acts of mail fraud therefore were essential in order for AIE to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

153.    AIE is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by AIE in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

154.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $87,445.33 pursuant to the fraudulent bills submitted through AIE.

155.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### EIGHTH CAUSE OF ACTION
**Against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

156.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 155 above.

157.    American Imaging of Edison LLC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

158.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax are employed by and/or associated with the AIE enterprise.

159.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knowingly have agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of the AIE enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than eighteen months seeking payments that AIE was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

160.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knew of, agreed to, and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

161.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $87,445.33 pursuant to the fraudulent bills submitted through AIE.

### NINTH CAUSE OF ACTION
**Against AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax
(Common Law Fraud)**

162.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 161 above.

163.   AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills seeking payment for the Fraudulent Services.

164.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that AIE was lawfully eligible to bill for or to collect PIP Benefits, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not; and (iii) in every claim, concealment of the fact that the Fraudulent Services were performed, to the extent that they were performed at all, pursuant to kickbacks.

165.   AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through AIE that were not compensable under New Jersey's No-Fault Laws.

166.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property

35

by reason of the above-described conduct in that it has paid at least $87,445.33 pursuant to the fraudulent bills submitted by AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax through AIE.

167.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

168.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TENTH CAUSE OF ACTION**
**Against AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax**
**(Unjust Enrichment)**

169.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 168 above.

170.    As set forth above, AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

171.    When GEICO paid the bills and charges submitted or caused to be submitted by AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax for PIP Benefits, it reasonably believed that it was legally obligated to make such payments based on theDefendants' improper, unlawful, and/or unjust acts.

172.    AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

36

173.    The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

174.    By reason of the above, AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have been unjustly enriched in an amount to be determined at trial, but in no event less than $87,445.33.

### ELEVENTH CAUSE OF ACTION
**Against Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax
(Violation of RICO, 18 U.S.C. § 1962(c))**

175.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 174 above.

176.    American Imaging Center of West Orange, LLC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

177.    Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax knowingly have conducted and/or participated, directly or indirectly, in the conduct of AICWO's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than seven years seeking payments that AICWO was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent charges and corresponding mailings submitted to GEICO

that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".

178.    AICWO's business was racketeering activity, inasmuch as the enterprise never was eligible to bill for or to collect PIP Benefits, and existed for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud were the regular way in which Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax operated AICWO, inasmuch as AICWO was not engaged in a legitimate medical practice, and acts of mail fraud therefore were essential in order for AICWO to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

179.    AICWO is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by AICWO in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

180.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $256,349.40 pursuant to the fraudulent bills submitted through AICWO.

181.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWELFTH CAUSE OF ACTION
### Against Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax
### (Violation of RICO, 18 U.S.C. § 1962(d))

182.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 181 above.

183.    American Imaging of West Orange, LLC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

184.    Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax are employed by and/or associated with the AICWO enterprise.

185.    Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax knowingly have agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of the AICWO enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than seven years seeking payments that AICWO was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants.  The fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

186.    Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax knew of, agreed to, and acted in furtherance of the common and overall objective (i.e., to defraud GEICO

and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

187.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $256,349.40 pursuant to the fraudulent bills submitted through AICWO.

### THIRTEENTH CAUSE OF ACTION
**Against AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax**
**(Common Law Fraud)**

188.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 187 above.

189.    AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills seeking payment for the Fraudulent Services.

190.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that AICWO was lawfully eligible to bill for or to collect PIP Benefits, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not; and (iii) in every claim, concealment of the fact that the Fraudulent Services were performed, to the extent that they were performed at all, pursuant to kickbacks.

191.    AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through AICWO that were not compensable under New Jersey's No-Fault Laws.

192.    GEICO justifiably relied on these false and fraudulent representations and acts of

fraudulent concealment, and as a proximate result has been injured in its business and property

by reason of the above-described conduct in that it has paid at least $256,349.40 pursuant to the

fraudulent bills submitted by AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA,

and Medimax through AICWO.

193.    The Defendants' extensive fraudulent conduct demonstrates a high degree of

moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

194.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and

punitive damages, together with interest and costs, and any other relief the Court deems just and

proper.

### FOURTEENTH CAUSE OF ACTION
**Against AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax**
**(Unjust Enrichment)**

195.    GEICO incorporates, as though fully set forth herein, each and every allegation in

paragraphs 1 through 194 above.

196.    As set forth above, AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta,

DIA, and Medimax have engaged in improper, unlawful, and/or unjust acts, all to the harm and

detriment of GEICO.

197.    When GEICO paid the bills and charges submitted or caused to be submitted by

AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax for PIP Benefits,

it reasonably believed that it was legally obligated to make such payments based on the

Defendants' improper, unlawful, and/or unjust acts.

198.    AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax

have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that

the Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

199.    The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

200.    By reason of the above, AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax have been unjustly enriched in an amount to be determined at trial, but in no event less than $256,349.40.

**FIFTEENTH CAUSE OF ACTION**
**Against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

201.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 200 above.

202.    American Imaging Center of Wayne, Inc. is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

203.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knowingly have conducted and/or participated, directly or indirectly, in the conduct of AICW's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than three and a half years seeking payments that AICW was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent charges and corresponding mailings submitted to GEICO

42

that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4".

204.    AICW's business was racketeering activity, inasmuch as the enterprise never was eligible to bill for or to collect PIP Benefits, and existed for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud were the regular way in which Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax operated AICW, inasmuch as AICW was not engaged in a legitimate medical practice, and acts of mail fraud therefore were essential in order for AICW to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

205.    AICW is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by AICW in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

206.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $121,302.34 pursuant to the fraudulent bills submitted through AICW.

207.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SIXTEENTH CAUSE OF ACTION
### Against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax
### (Violation of RICO, 18 U.S.C. § 1962(d))

208.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 207 above.

209.    American Imaging Center of Wayne, Inc. is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

210.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax are employed by and/or associated with the AICW enterprise.

211.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knowingly have agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of the AICW enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than three and a half years seeking payments that AICW was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4". Each such mailing was made in furtherance of the mail fraud scheme.

212.    Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax knew of, agreed to, and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

44

213.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $121,302.34 pursuant to the fraudulent bills submitted through AICW.

<strong>SEVENTEENTH CAUSE OF ACTION</strong><br/><strong>Against AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax</strong><br/><strong>(Common Law Fraud)</strong>

214.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 213 above.

215.    AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills seeking payment for the Fraudulent Services.

216.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that AICW was lawfully eligible to bill for or to collect PIP Benefits, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not; and (iii) in every claim, concealment of the fact that the Fraudulent Services were performed, to the extent that they were performed at all, pursuant to kickbacks.

217.    AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through AICWO that were not compensable under New Jersey's No-Fault Laws.

218.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property

by reason of the above-described conduct in that it has paid at least $256,349.40 pursuant to the fraudulent bills submitted by AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax through AICW.

219.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

220.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**EIGHTEENTH CAUSE OF ACTION**
**Against AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax**
**(Unjust Enrichment)**

221.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 220 above.

222.    As set forth above, AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

223.    When GEICO paid the bills and charges submitted or caused to be submitted by AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax for PIP Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

224.    AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

225.    The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

226.    By reason of the above, AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax have been unjustly enriched in an amount to be determined at trial, but in no event less than $121,302.34.

**NINETEENTH CAUSE OF ACTION**
**Against Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

227.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 226 above.

228.    The Imaging Center at Montville, LLC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

229.    Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax knowingly have conducted and/or participated, directly or indirectly, in the conduct of ICAM's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted dozens of fraudulent charges on a continuous basis for more than six years seeking payments that ICAM was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent charges and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "5".

230.    ICAM's business was racketeering activity, inasmuch as the enterprise never was eligible to bill for or to collect PIP Benefits, and existed for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud were the regular way in which Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax operated ICAM, inasmuch as ICAM was not engaged in a legitimate medical practice, and acts of mail fraud therefore were essential in order for ICAM to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

231.    ICAM is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by ICAM in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

232.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $16,935.83 pursuant to the fraudulent bills submitted through AICW.

233.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTIETH CAUSE OF ACTION
### Against Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax
### (Violation of RICO, 18 U.S.C. § 1962(d))

234.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 233 above.

235.    The Imaging Center at Montville, LLC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

236.    Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax are employed by and/or associated with the ICAM enterprise.

237.    Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax knowingly have agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of the ICAM enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted dozens of fraudulent charges on a continuous basis for more than six years seeking payments that ICAM was not entitled to receive under the No-Fault Laws because: (i) it was secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own an ambulatory care facility under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. The fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "5". Each such mailing was made in furtherance of the mail fraud scheme.

238.    Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax knew of, agreed to, and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

239.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $16,935.83 pursuant to the fraudulent bills submitted through ICAM.

## TWENTY-FIRST CAUSE OF ACTION
### Against ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax
### (Common Law Fraud)

240.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 239 above.

241.    ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills seeking payment for the Fraudulent Services.

242.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that ICAM was lawfully eligible to bill for or to collect PIP Benefits, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not; and (iii) in every claim, concealment of the fact that the Fraudulent Services were performed, to the extent that they were performed at all, pursuant to kickbacks.

243.    ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through ICAM that were not compensable under New Jersey's No-Fault Laws.

244.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $16,935.83 pursuant to the fraudulent bills submitted by ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax through ICAM.

245.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

246.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### TWENTY-SECOND CAUSE OF ACTION
**Against ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax**
**(Unjust Enrichment)**

247.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 246 above.

248.    As set forth above, ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

249.    When GEICO paid the bills and charges submitted or caused to be submitted by ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax for PIP Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

250.    ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

251.    The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

252. By reason of the above, ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax have been unjustly enriched in an amount to be determined at trial, but in no event less than $16,935.83.

### TWENTY-THIRD CAUSE OF ACTION
**Against the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

253. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 252 above.

254. MMI, AIE, AICWO, AICW, and ICAM constitute an association-in-fact "enterprise" (the "Zuberi Enterprise") as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce. The members of the Zuberi Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision making, with each member fulfilling a specific and necessary role to carry out and facilitate its common purpose. Specifically, MMI, AIE, AICWO, AICW, and ICAM ostensibly are independent entities with different names and tax identification numbers that were created as vehicles to achieve a common purpose – namely, to facilitate the submission of fraudulent charges to GEICO and other insurers. The Zuberi Enterprise has been operated under several separate corporate names in order to reduce the number of bills submitted under any individual name, in an attempt to avoid attracting the attention and scrutiny of GEICO, other insurers, and law enforcement to the volume of fraudulent billing and the pattern of fraudulent charges originating from any one company. Accordingly, the carrying out of this scheme would be beyond the capacity of each member of the Zuberi Enterprise acting individually or without the aid of each other.

255.    The Zuberi Enterprise is distinct from and has an existence beyond the pattern of racketeering that is described herein, namely by recruiting, employing overseeing and coordinating many professionals and non-professionals who have been responsible for facilitating and performing a wide variety of administrative and professional functions beyond the acts of mail fraud (i.e., the submission of the fraudulent bills to GEICO and other insurers), by creating and maintaining patient files and other records, by recruiting and supervising personnel, by negotiating and executing various contracts, by maintaining the bookkeeping and accounting functions necessary to manage the receipt and distribution of the insurance proceeds, and by retaining collection lawyers whose services also were used to generate payments from insurance companies to support all of the aforesaid functions.

256.    Zuberi, H. Paracha, N. Zuberi, Gupta, F. Paracha, Siddiqui, DIA, and Medimax were employed by and/or associated with the Zuberi Enterprise.

257.    Zuberi, H. Paracha, N. Zuberi, Gupta, F. Paracha, Siddiqui, DIA, and Medimax knowingly conducted and/or participated, directly or indirectly, in the conduct of the Zuberi Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over six years seeking payments that the Provider Defendants were not eligible to receive under the No-Fault Laws because: (i) they were secretly and unlawfully owned and controlled by Zuberi, an individual who was not eligible to own ambulatory care facilities under New Jersey law; and (ii) the Fraudulent Services were performed and billed pursuant to illegal kickback arrangements designed solely to enrich the Defendants. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering

activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "1" – "5".

258.    The Zuberi Enterprise's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Zuberi, H. Paracha, N. Zuberi, Gupta, F. Paracha, Siddiqui, DIA, and Medimax operated the Zuberi Enterprise, inasmuch as the Provider Defendants never were eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for the Zuberi Enterprise to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through the Provider Defendants to the present day.

259.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $799,000.00 pursuant to the fraudulent bills submitted by the Defendants through the Provider Defendants.

260.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### TWENTY-FOURTH CAUSE OF ACTION
**Against the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d)**

261.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 260 above.

262.    Zuberi, H. Paracha, N. Zuberi, Gupta, F. Paracha, Siddiqui, DIA, and Medimax knowingly have agreed, combined and conspired to conduct and/or participate, directly or

indirectly, in the conduct of the Zuberi Enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent bills to GEICO. These acts of mail fraud include, but are not limited to, those that are described in the charts annexed hereto as Exhibits "1" – "5".

263.    Each member of the Zuberi Enterprise knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

264.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $799,000.00 pursuant to the fraudulent bills submitted by the Defendants through the Provider Defendants.

265.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant

### JURY DEMAND

266.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.    On the First Cause of Action against the Provider Defendants, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that the Provider Defendants have no right to receive payment for any pending bills submitted to GEICO;

B.      On the Second Cause of Action against Zuberi, H. Paracha, N. Zuberi, Gupta, F. Paracha, Siddiqui, DIA, Medimax, MMI, AIE, AICWO, AICW, and ICAM, damages in the form of disgorgement of the PIP benefits paid in an amount to be established at trial, but exceeding $799,000.00, as well as (i) treble damages, (ii) the costs and counsel fees incurred in connection with the investigation conducted by GEICO, and (iii) reimbursement of the costs and counsel fees associated with the prosecution of this litigation pursuant to N.J.S.A. 17:33A-7;

C.      On the Third Cause of Action against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $196,196.05, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.      On the Fourth Cause of Action against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $196,196.05, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

E.      On the Fifth Cause of Action against MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $196,196.05, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.      On the Sixth Cause of Action against MMI, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, more than $196,196.05 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

G.      On the Seventh Cause of Action against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at

trial but in excess of $87,445.33, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H.      On the Eighth Cause of Action against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $87,445.33, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.      On the Ninth Cause of Action against AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $87,445.33, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

J.      On the Tenth Cause of Action against AIE, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, more than $87,445.33 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

K.      On the Eleventh Cause of Action against Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $256,349.40, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

L.      On the Twelfth Cause of Action against Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $256,349.40, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

M.      On the Thirteenth Cause of Action against AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an

amount to be determined at trial but in excess of $256,349.40, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

N.     On the Fourteenth Cause of Action against AICWO, Zuberi, F. Paracha, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax, more than $256,349.40 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

O.     On the Fifteenth Cause of Action against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $121,302.34, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

P.     On the Sixteenth Cause of Action against Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $121,302.34, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

Q.     On the Seventeenth Cause of Action against AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $121,302.34, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

R.     On the Eighteenth Cause of Action against AICW, Zuberi, N. Zuberi, H. Paracha, Gupta, DIA, and Medimax, more than $121,302.34 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

S.     On the Nineteenth Cause of Action against Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be

determined at trial but in excess of $16,935.83, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

T.      On the Twentieth Cause of Action against Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $16,935.83, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

U.      On the Twenty-First Cause of Action against ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $16,935.83, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

V.      On the Twenty-Second Cause of Action against ICAM, Zuberi, Siddiqui, H. Paracha, N. Zuberi, Gupta, DIA, and Medimax, more than $16,935.83 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

W.      On the Twenty-Third Cause of Action against Zuberi, H. Paracha, N. Zuberi, Gupta, F. Paracha, Siddiqui, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $799,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest; and

X.    On the Twenty-Fourth Cause of Action against Zuberi, H. Paracha, N. Zuberi, Gupta, F. Paracha, Siddiqui, DIA, and Medimax, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $799,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest.

Dated:      Hackensack, New Jersey
            June 30, 2015

                        RIVKIN RADLER LLP

                        By: _____
                            John Robertelli, Esq.
                            21 Main Street, Suite 158
                            Court Plaza South, West Wing
                            Hackensack, New Jersey 07601
                            (201) 287-2460

60