**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., GEICO INDEMNITY CO., GEICO GENERAL INSURANCE COMPANY, and GEICO CASUALTY CO., <br><br> Plaintiffs, <br><br> v. <br><br> REHAN ZUBERI, HUMARA T. PARACHA, NAWAB H. ZUBERI, ROHIT GUPTA, FAISAL L. PARACHA, SALMAN SIDDIQUI, DIAGNOSTIC IMAGING AFFILIATES LIMITED LIABILITY COMPANY, MEDIMAX BILLING SERVICES, LLC, MEDICAL & MOLECULAR IMAGING INC., AMERICAN IMAGING OF EDISON LLC, AMERICAN IMAGING CENTER OF WEST ORANGE, LLC, AMERICAN IMAGING CENTER OF WAYNE INC., and THE IMAGING CENTER AT MONTVILLE, LLC, <br><br> Defendants. | Civil Action No.: 15-4895 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants Rehan Zuberi, Humara Pachara, Nawab H. Zuberi, Diagnostic Imaging Affiliates LLC, Medical & Molecular Imaging Inc., American Imaging of Edison LLC, American Imaging Center of West Orange LLC, American Imaging Center of Wayne Inc. and The Imaging Center of Montville LLC (collectively "Moving Defendants")'s Motion to Dismiss the Complaint or in the Alternative to Stay the Proceedings. (ECF No. 21.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil

Procedure. For the reasons set forth below, the Court denies Moving Defendants' Motion to Dismiss but grants the Motion to Stay.

## BACKGROUND[1]

Plaintiffs (collectively "GEICO") commenced this action on June 30, 2015, by filing a twenty-four count complaint against Defendants, alleging a scheme to defraud GEICO in connection with PIP billing. (*See* ECF No. 1 ("Compl.").)

GEICO alleges that beginning in 2003, Rehan Zuberi entered into a secret scheme with Humara Paracha, Nawab Zuberi, and various others whereby Rehan Zuberi paid Humara Paracha, Nawab Zuberi, and various others to falsely represent in corporate filings and Department of Health and Senior Services ("DHSS") licensing applications that they owned and controlled certain corporate entities (the "Provider Defendants"), while in actuality ceding true ownership and control over the Provider Defendants to Rehan Zuberi in violation of New Jersey law. (Compl. ¶¶ 69-86.) Then, the Complaint alleges, Rehan Zuberi, Humara Paracha, Nawab Zuberi, and their co-Defendants entered into a secret scheme with various chiropractors and physicians in New Jersey (the "Referral Sources"), whereby Rehan Zuberi, Humara Paracha, Nawab Zuberi, and their co-Defendants agreed to pay kickbacks to the Referral Sources in exchange for large numbers of patient referrals to the Provider Defendants. (*Id.*)

GEICO alleges that given the Provider Defendants' illegal corporate structures, and the kickbacks that the Moving Defendants and their co-Defendants paid in return for patient referrals to the Provider Defendants, the Provider Defendants were not eligible to collect PIP Benefits from GEICO or, indeed, any other insurer. (Compl. ¶¶ 43-44, 49, 55, 107.) Despite this

---

[1] This background is derived from Plaintiff's Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

ineligibility, the Moving Defendants and their co-Defendants submitted a considerable amount of PIP billing through the Provider Defendants to GEICO. (*Id.* ¶¶ 106-07; Exs. 1-5.)

GEICO contends that each of the PIP bills that the Moving Defendants and their co-Defendants submitted through the Provider Defendants to GEICO uniformly misrepresented to GEICO that the Provider Defendants were in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, and therefore were eligible to receive PIP reimbursement. According to GEICO, the Provider Defendants were not in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, and were not eligible to receive PIP reimbursement, because they were secretly and unlawfully owned and controlled by Rehan Zuberi, whose prior criminal convictions barred him from owning or controlling the Provider Defendants, and because they paid illegal kickbacks to the Referral Sources in exchange for patient referrals. (*Id.*) Furthermore, GEICO contends that the underlying radiology services were not provided in compliance with all applicable statutory and regulatory requirements governing healthcare practice in New Jersey, were not medically necessary, and were not eligible for PIP reimbursement, because the underlying radiology services were provided through the Provider Defendants, which secretly and unlawfully were owned and controlled by Rehan Zuberi, and because the underlying radiology services were provided—to the extent that they were provided at all—pursuant to the Defendants' illegal kickback scheme. (*Id.*)

The Complaint also notes that on or about June 14, 2014, Rehan Zuberi, Humara Paracha, Nawab Zuberi, and several of their co-Defendants (among others) were arrested and charged in connection with the Defendants' fraudulent scheme. (*Id.* ¶¶ 98-99.) Additionally, the Complaint

3

alleges that or about October 16, 2014, seven physicians and chiropractors who allegedly referred patients to various of the ambulatory care facilities that Rehan Zuberi secretly and unlawfully owned and controlled—including the Provider Defendants—were arrested. (*Id.* ¶¶ 100-01.)

The Complaint states that on May 11, 2015, Rehan Zuberi pleaded guilty to first-degree financial facilitation of criminal activity and second-degree conspiracy to commit commercial bribery in connection with the Defendants' fraudulent scheme. (*Id.* ¶¶ 102-03.) According to GEICO, the plea agreement calls for Rehan Zuberi to receive a 10-year prison sentence with a four-year parole non-eligibility period. (*Id.*) The Complaint further alleges that in connection with his guilty plea, Rehan Zuberi admitted that he provided thousands of kickbacks totaling millions of dollars in exchange for referrals to the Provider Defendants, including referrals for medically unnecessary radiology services. (*Id.* ¶ 104.) Additionally, the Complaint states that on May 11, 2015, Humara Paracha pleaded guilty to third-degree conspiracy to commit commercial bribery in connection with the Defendants' fraudulent scheme. (*Id.* ¶ 105.)

Based on these allegations, GEICO asserts claims against the Moving Defendants and their co-Defendants under the New Jersey Insurance Fraud Prevention Act ("IFPA"), the civil RICO statute, for common law fraud, and for unjust enrichment, in which it seeks to recover the more than $799,000.00 that it paid in reliance on the Defendants' fraudulent PIP billing. (*Id.* ¶ 105, et seq.) In addition, GEICO seeks a declaratory judgment to the effect that it is not liable to pay any of the Provider Defendants' pending fraudulent PIP billing, which amounts to more than $1,000,000.00. (*Id.*)

On August 27, 2015, Moving Defendants filed the instant Motion to Dismiss the

4

Complaint or in the Alternative to Stay the Proceedings. (ECF No. 21 at 9-18 ("Mov. Br.").) On September 21, 2015, GEICO filed opposition. (ECF No. 29 ("Opp. Br.").) A review of the docket shows that no reply was filed. The motion is now ripe for resolution.

## **LEGAL STANDARDS**

### A.   Motion to Dismiss

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as

well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

With respect to pleading fraud under Rule 9(b), the "'circumstances' of the alleged fraud [must] be pled with enough specificity to 'place defendants on notice of the precise misconduct with which they are charged.'" *Shanus v. Robert Edward Auctions, LLC*, 2012 U.S. Dist. LEXIS 42707, at *18 (D.N.J. 2012) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Furthermore, the "heightened standard for pleading fraud is relaxed in circumstances where the information necessary to plead with particularity is concealed by defendants." *Hunt Constr. Group Inc. v. Farina*, 2012 U.S. Dist. LEXIS 2676, at *14-15 (D.N.J. 2012) (citations omitted0.

### B. Motion to Stay

A court has discretion to stay a proceeding where "the interests of justice . . . require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970). The Supreme Court has noted that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants," and the court will "weigh competing interests and maintain an even balance" when making such a determination. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (internal citations omitted); *see also In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 817 (3d Cir. 1982).

While it "may be warranted in certain circumstances," a stay of civil proceedings when there is parallel criminal proceedings "is not constitutionally required." *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F.Supp.2d 523, 526 (D.N.J. 1998); *see also Trustees of*

*Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1138 (S.D.N.Y. 1995). Indeed, courts have noted that a stay of a civil proceeding is an "extraordinary remedy." *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987).

Nevertheless, "a court may . . . exercise its discretion to stay the civil case in the interests of justice." *Walsh*, 7 F.Supp.2d at 528 (citation omitted). Generally, courts will consider six factors when deciding whether to grant a stay: (1) the extent to which the issues in the criminal and civil case overlap; (2) the status of the case, including whether the defendant has been indicted; (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; (4) the private interests of and burdens on defendants; (5) the interests of the court; and (6) the public interest. *Id.* at 527 (citing *Transworld*, 886 F. Supp. at 1139).

## ANALYSIS

### A. Plaintiffs' Have Satisfied Their Pleading Burden Under Rule 12(b)(6) and Rule 9(b) And The Complaint Shall Not Be Dismissed.

Moving Defendants argue that the Complaint should be dismissed because it is speculative. (Mov. Br. at 2-4.) Specifically, Moving Defendants contend that GEICO's "naked and baseless assertions of wrongdoing" fail to specify "what evidence actually supports [the] allegations of fraud." (*Id.* at 2-3.) According to Moving Defendants, GEICO has not "presented any proffer that Mr. Zuberi in fact owns, operates, or manages" the Provider Defendants." (*Id.* at 3.) Moving Defendants argue that "the only fact which the plaintiffs allege with specificity is the existence of defendant Rehan Zuberi's criminal past conviction" but that otherwise "plaintiffs only make generalized and baseless allegations that the defendants were in some sort of scheme

7

together . . . [which are] calculated to cast an aura of suspicion upon defendants and justifying [sic] a 'fishing expedition' into all their affairs." (*Id.* at 3-4.)

In response, GEICO argues that the Complaint satisfies the Third Circuit pleading requirements by setting forth robust factual detail, including: the specific dates Rehan Zuberi arranged for his co-conspirators to make false representations and cede control; the manner in which he maintained his illegal ownership; the specific time period in which kickbacks were paid as well as the amount; the underlying criminal prosecutions; and the exact bills that contained the misrepresentations, identified by claim number, approximate mailing date, type of service billed, and bill amount. (Opp. Br. at 9-10 (citing to Compl.).) GEICO further contends that Moving Defendants do not address any of the substantive allegations in the Complaint and overlook the "very large body of federal authority – in highly analogous cases – in which federal courts have refused to dismiss substantially similar complaints against substantially similar alleged PIP fraud rings pursuant to Rules 12(b)(6) and 9(b)." (*Id.* at 11-12 (collecting cases).)

The Court agrees with GEICO and finds that they have satisfied their burden under Rules 12(b)(6) and 9(b). The Court addresses each rule separately.

1. Rule 12(b)(6)

As noted previously, to withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than

8

conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

GEICO asserts claims against the Moving Defendants and their co-Defendants under the New Jersey Insurance Fraud Prevention Act ("IFPA"),[2] the civil RICO statute,[3] for common law fraud,[4] and for unjust enrichment.[5] In accordance with *Burtch*, the Court shall set forth the required elements for each cause of action and then determine whether the allegations in the Complaint plausibly gives rise to an entitlement for relief.

New Jersey enacted the IFPA in order "to confront aggressively the problem of insurance fraud . . . [by] requiring the restitution of fraudulently obtained insurance benefits." N.J.S.A. 17:33A–2. In relevant part, a person violates the IFPA if he

> (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefits pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L. 1952, c. 174 (*C.39:6-61* et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
> (2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the Unsatisfied Claim and Judgment Fund or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c.174 (*C.39:6-61* et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim;

---

[2] Count Two.
[3] Counts Three, Four, Seven, Eight, Eleven, Twelve, Fifteen, Sixteen, Nineteen, Twenty, Twenty-Three, Twenty-Four.
[4] Counts Five, Nine, Thirteen, Seventeen, Twenty-One.
[5] Counts Six, Ten, Fourteen, Eighteen, Twenty-Two.

9

N.J.S.A. 17:33A–4(a). Furthermore, a person violates the IFPA if he "knowingly assists, conspires with, or urges any person or practitioner to violate" any of the IFPA's provisions, *id.* 17:33A–4(b), or "if, due to the assistance, conspiracy or urging of any person or practitioner, he knowingly benefits, directly or indirectly, from the proceeds derived from a violation" of the IFPA, *id.* 17:33A–4(c). Under the IFPA, "[a]ny insurance company damaged as a result of a violation of any provision of [the IFPA] may sue therefor in any court of competent jurisdiction to recover compensatory damages," *id.* 17:33A–7(a), and "shall recover treble damages if the court determines that the defendant has engaged in a pattern of violating [the IFPA]," *id.* 17:33A–7(b).

As to the RICO claims, 18 U.S.C. § 1962(c) provides, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Id.* The Supreme Court stated in *Sedima v. Imrex Co.*,

> [a] violation of § 1962(c), . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

473 U.S. 479, 496 (1985).

Under New Jersey law,[6] the five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of

---

[6] "A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties do

10

its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997) (citing *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624–25 (1981)).

Finally, with respect to unjust enrichment, the doctrine "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Assocs. Commercial Corp. v. Wallia*, 211 N.J. Super. 231, 243 (App. Div. 1986) (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108 (App. Div. 1966)). "A cause of action for unjust enrichment requires proof that 'defendant[s] received a benefit and that retention of that benefit without payment would be unjust.'" *County of Essex v. First Union Nat. Bank*, 373 N.J. Super. 543, 549-50 (App. Div. 2004) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)), *aff'd, remanded by* 186 N.J. 46 (2006).

The Court is satisfied that the Complaint adequately alleges facts which plausibly gives rise to an entitlement for relief under all four causes of action. The Complaint details a scheme whereby Moving Defendants and co-Defendants engaged in illegal activity and misrepresented eligibility for PIP Benefits from GEICO. (*See, e.g.*, Compl. ¶¶ 43-44, 49, 55, 106-07, Exs. 1-5.) The Court further notes that the Complaint specifically alleges that Rehan Zuberi, Humara Paracha, and certain other co-Defendants have plead guilty to this precise activity. (*See id.* ¶¶ 102-05.)

Many other courts have held the same in cases involving very similar facts. Most on point is *Gov't Employees Ins. Co. (GEICO) v. Korn*, where a sister court similarly denied a motion to dismiss RICO, IFPA common law fraud, and unjust enrichment claims against an alleged PIP fraud ring where the complaint likewise alleged that defendants submitted claims

---

not dispute that New Jersey law applies.                                  11

that misrepresented the corporate legitimacy of the billing entities and the medical necessity of the underlying services. No. 14-5742, 2015 WL 5334503, at *4 (D.N.J. Sept. 14, 2015). There are multiple other cases in line with this holding. *See GEICO, et al. v. Eva Gateva, M.D., et al.*, No. 12-4236, 2014 U.S. Dist. LEXIS 44878, at *14-18 (E.D.N.Y. March 10, 2014); *GEICO et al. v. Jacob Esses, M.D., et al.*, No. 12-4424, 2013 U.S. Dist. LEXIS 184213, at *18 (E.D.N.Y. Sept. 27, 2013); *GEICO, et al. v. Hollis Medical Care, P.C., et al.*, No. 10-4341, 2011 U.S. Dist. LEXIS 130721, at *22-26 (E.D.N.Y. Nov. 9, 2011); *Allstate Ins. Co., et al., v. Valley Physical Medicine & Rehabilitation, P.C., et al.*, No. 05-5934, 2009 U.S. Dist. LEXIS 91291, at *26-27 (E.D.N.Y. Sept. 30, 2009); *State Farm Mutual Automobile Ins. Co. v. Semion Grafman, et al.*, 655 F.Supp.2d 212, 226-28 (E.D.N.Y. 2009); *State Farm Mutual Automobile Ins. Co. v. Valery Kalika, M.D., et al.*, No. 04-4631, 2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. March 16, 2006); *AIU Ins. Co., et al. v. Olmecs Medical Supply, Inc., et al.*, No. 04-2934, 2005 U.S. Dist. LEXIS 29666, at *29-40 (E.D.N.Y. Feb. 22, 2005); *State Farm Mutual Ins. Co., et al. v. Red Lion Medical Center, Inc., et al.*, No. 95–2542, 2003 U.S. Dist. LEXIS 12150 (E.D. Pa. June 20, 2003); *State Farm Mutual Ins. Co. v. Anthanasios Makris, et al.*, No. 01–5351, 2003 U.S. Dist. LEXIS 3374 (E.D. Pa. March 4, 2003).

Moving Defendants' Motion to Dismiss under Rule 12(b)(6) will be denied.

2. <u>Rule 9(b)</u>

For the same reasons, the Court finds that GEICO has sufficiently plead their claims to satisfy the requirements of Rule 9(b).

As noted, under Rule 9(b), the "'circumstances' of the alleged fraud [must] be pled with enough specificity to 'place defendants on notice of the precise misconduct with which they are

12

charged.'" *Shanus*, 2012 U.S. Dist. LEXIS 42707, at *18 (quoting *Seville Indus.*, 742 F.2d at 791). Furthermore, the "heightened standard for pleading fraud is relaxed in circumstances where the information necessary to plead with particularity is concealed by defendants." *Farina*, 2012 U.S. Dist. LEXIS 2676, at *14-15.

Here, the Complaint give numerous specific examples of Moving Defendants' allegedly fraudulent conduct, including: the specific dates Rehan Zuberi arranged for his co-conspirators to make false representations and cede control (Compl. ¶¶ 69-80); the manner in which he maintained his illegal ownership (*id.* ¶¶ 81-86); the specific time period in which kickbacks were paid as well as the amount (*id.* ¶¶ 87-97); the underlying criminal prosecutions (*id.* ¶¶ 98-105); and the exact bills that contained the misrepresentations, identified by claim number, approximate mailing date, type of service billed, and bill amount (*id.* ¶¶ 106-07, Exs. 1-5).

Moving Defendants' Motion to Dismiss under Rule 9(b) will be denied.

**B.     In The Interests Of Justice, This Matter Shall Be Stayed.**

Moving Defendants argue that the instant civil matter should be stayed pending the resolution of a related criminal matter. (Mov. Br. at 4-9.) In particular, Moving Defendants claim that Defendant Rehan Zuberi and his wife Humara Pachara recently entered guilty pleas in an "ongoing" criminal case involving an alleged conspiracy to defraud insurance carriers, but have not yet been sentenced. (*Id.* at 4.) Moving Defendants note that GEICO's Complaint details and relies on this very situation. (*Id.*) Thus, Moving Defendants assert that "there remains the very real potential that persons not currently charged criminally may wind up being charged by virtue of statements made in conjunction with the instant case, or that persons currently charged may further implicate themselves by virtue of providing answers in the instant

13

case." (*Id.*) As such, Moving Defendants argue that the significant overlap between the civil and criminal cases, the risk of self-incrimination if the instant action proceeds, the lack of unique prejudice to Plaintiff if the instant action is stayed, the presumably short length of the stay since Moving Defendants are merely awaiting sentencing in the related criminal matter, and the lack of any overarching public interest all weigh in favor of granting the motion to stay. (*Id.* at 5-9.)

In response, GEICO contends that a stay is not warranted. (Opp. Br. at 12-17.) GEICO asserts that the presence of overlapping issues between this case and the criminal proceedings in state court does not militate for a stay, and is rather simply a threshold issue. (*Id.* at 12.) In particular, GEICO argues that the status of the criminal proceedings (post-plea, pre-sentencing), Defendants' well-documented history of fraudulent conduct, the lack of cognizable prejudice to Moving Defendants if the case proceeds, and the interests of the Court and the public collectively weigh in favor of denying the motion to stay. (*Id.* at 13-17.)

As noted, courts consider six factors when deciding whether to grant a stay: (1) the extent to which the issues in the criminal and civil case overlap; (2) the status of the case, including whether the defendant has been indicted; (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; (4) the private interests of and burdens on defendants; (5) the interests of the court; and (6) the public interest. *Walsh*, 7 F.Supp.2d at 527 (citing *Transworld*, 886 F. Supp. at 1139). The Court finds that when balancing these factors, they weigh in favor of granting a stay. Of paramount significance to the Court is the judge's ability in state court to vacate the guilty plea, as discussed below.

With respect to the first factor, there is no question that the issues in the criminal and civil case substantially overlap. At base in both actions is an alleged scheme to defraud insurance

14

carriers in connection with medical billing. Indeed, GEICO's Complaint cites to the criminal cases to support their allegations in the instant lawsuit. (*Id.* ¶¶ 98-105.) Thus, this factor weighs in favor granting a stay.

Regarding the second factor—the status of the case—there is no dispute that the criminal case at issue here has progressed past indictment all the way to guilty plea and that Rehan Zuberi and Humara Pachara are awaiting sentencing. (Mov. Br. at 7.) GEICO argues that because there will be no criminal trial, there is no concern that the government may be unfairly advantaged by any admissions made in the course of the civil action and cites to case law in support. (Opp. Br. at 13-15.) However, even though there is no criminal trial pending for Moving Defendants, the state court judge could theoretically vacate the plea agreement based on admissions made in the civil action. "The standard implicated for the withdrawal of guilty pleas dictates that if at the time of sentencing the judge determines that 'the interests of justice' will not be served by effecting the plea agreement, *the judge may vacate the plea* or the defendant shall be permitted to withdraw his plea." *State v. Salentre*, 242 N.J. Super. 108, 112 (App. Div. 1990) (citing R. 3:9-3(e)) (emphasis added). Accordingly, this factor weighs heavily in favor of a stay.

The third factor directs the Court to weigh the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay. GEICO contends that they have a legitimate interest in having this case proceed expeditiously, and that grating the stay is "likely to result in the loss or spoliation of evidence, given Zuberi's well-documented history of fraudulent conduct." (Opp. Br. at 15.) However, the Court notes that there are no allegations that any of the Moving Defendants are "leaving the country or otherwise attempting to gain an unfair advantage by seeking a stay." *Walsh*, 7 F. Supp. 2d at 528. The Court declines to infer

15

that Moving Defendants will necessarily destroy evidence or secrete/dissipate funds that could be used to satisfy a judgment in the civil action, but nevertheless finds that this factor weighs slightly in favor of denying the stay.

With respect to the fourth factor—the private interests of and burdens on defendants—Moving Defendants point to the potential implication of their Fifth Amendment privilege. As noted in connection with the second factor, the Court is concerned by the state court judge's ability to ultimately vacate the guilty plea. *See Salentre*, 242 N.J. Super. at 112. The Court accordingly finds that this factor weighs heavily in favor of staying this action.

The interests of the Court (the fifth factor) weigh in favor of granting a stay. Even though the requested stay is open-ended, the Court finds that it would be more efficient to allow the criminal case to fully conclude before allowing the civil action to proceed. Without a stay, interrogatory and deposition discovery would likely be disrupted and cause inefficiency, because Moving Defendants have indicated that they will assert Fifth Amendment privileges. "Not only would this burden the Magistrate Judge and this Court with deciding a constant stream of privilege issues, but if some defendants were forced to assert the privilege while others were not, it would be difficult or impossible to fairly apportion liability because of the differing factual record among defendants." *Walsh*, 7 F. Supp. 2d at 528-29.

Finally, regarding the public interest, the Court acknowledges the general public interest in the "efficient resolution of disputes with minimal delay," *De'Omilia*, 2013 U.S. Dist. LEXIS 163601, at *15, but agrees with Moving Defendants that there is no discernible, overarching public interest militating against a stay when compared to the potential Fifth Amendment concerns raised by Moving Defendants. Thus, the fifth factor weighs in favor of granting the

16

stay.

When weighing all of the factors together, the Court finds that this matter should be stayed in the interests of justice.

## CONCLUSION

For the reasons above, the Court denies Moving Defendants' Motion to Dismiss but grants the Motion to Stay. (ECF No. 21.) An appropriate Order accompanies this Opinion.

DATED: October ___, 2015

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

17