**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| |
|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., *et al.*, |
| Plaintiffs, |
| v. |
| REHAN ZUBERI, *et al.*, |
| Defendants. |

Civil Action No.: 15-4895 (JLL)

**OPINION**

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co.'s ("Plaintiffs") Motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (ECF No. 104).[1] Defendants Rehan Zuberi, Humara Paracha, Nawab H. Zuberi, Diagnostic Imaging Affiliates LLC, Medical & Molecular Imaging Inc., American Imaging of Edison LLC, American Imaging Center of West Orange LLC, American Imaging Center of Wayne Inc., and The Imaging Center of Montville LLC ("Zuberi Defendants") have submitted Opposition (ECF No. 106 ("Def. Opp. Br."))[2], to which Plaintiffs have replied. (ECF No. 108 ("Pl. Rep. Br.")). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal

---

[1] The Court notes that Plaintiffs' current Motion for Default Judgment is a renewed Motion. As such, Plaintiffs have chosen to rely on their previously submitted brief in support of Default Judgment, which can be found at ECF No. 96-1 ("Pl. Mov. Br."). Accordingly, the Court relies on the arguments advanced therein.

[2] The Court notes that Defendants Salman Siddiqui and Faisal L. Paracha have never participated in this action and default was entered against both of these defendants on August 28, 2015 and January 29, 2016, respectively. (*See* ECF Nos. 23, 52). Their status as defaulting Defendants does not change the analysis herein, as the Zuberi Defendants are also currently in default. However, the Court simply notes that these two Defendants have not opposed the pending Motion for Default Judgment.

Rules of Civil Procedure. For the reasons set forth below, the Court grants Plaintiffs' Motion for Default Judgment in its entirety.

## I. BACKGROUND

The Court presumes the parties are familiar with the factual background and the allegations asserted in Plaintiffs' Complaint (ECF No. 1) based on the parties' own involvement in this case as well as this Court's Opinions and Orders dated October 1, 2015, January 17, 2017, April 18, 2017, and August 30, 2017. (ECF Nos. 30, 87, 95, 103). Accordingly, the Court will set forth the relevant factual and procedural background.

On June 30, 2015 Plaintiffs instituted this action against Defendants seeking to recover insurance benefits improperly paid to Defendants. (*See generally* ECF No. 1 ("Compl.")). Specifically, Plaintiffs sought to recover said payments on the grounds that Defendants submitted fraudulent bills and were engaged in unlawful "kickbacks." (Compl. ¶¶ 66-107). Accordingly, this action was brought to recover the benefits that were paid by Plaintiffs to Defendants under false pretenses.

The parties engaged in a lengthy discovery period consistent with a joint discovery plan that the Court adopted.[3] (ECF Nos. 61, 63). However, despite how long this action was pending and the discovery exchanged, Plaintiffs believed Defendants were not complying with their discovery obligations. The Court first became aware of the discovery disputes on September 22, 2016, when Plaintiffs' counsel submitted a letter regarding same. (ECF No. 74). Thereafter, the Court permitted Defendants to respond to Plaintiffs' letter and Plaintiffs were allowed to reply to

---

[3] This matter was stayed as a result of unrelated criminal matters pending against Defendants Rehan Zuberi and Humara T. Paracha. (ECF No. 31). The stay was lifted on March 24, 2016 after said matters concluded. (ECF No. 59).

Defendants' response. (ECF Nos. 75-78). After review of the submissions, Hon. Joseph A. Dickson, U.S.M.J. allowed Plaintiffs to file a Motion to Compel Discovery. (ECF No. 79).

Plaintiffs filed their Motion to Compel Discovery on October 14, 2016, wherein they recounted the various discovery issues that were present. (ECF No. 80). Instead of opposing Plaintiffs' Motion, Defendants submitted a Motion to Extend Time to Respond to Plaintiffs' Motion to Compel Discovery because Defendants were attempting to contact the various persons and/or entities that were supposedly in possession of the demanded discovery. (ECF No. 81 ¶ 8). Judge Dickson reviewed the submissions and granted Plaintiffs' Motion to Compel Discovery and denied Defendants' Motion. (ECF No. 83). In doing so, Judge Dickson found that

> [t]he fact that the record reflects that Defendants *are only now reaching out to people who may have possession of relevant documents*, approximately five months after Plaintiffs served their discovery requests *and nearly a month after this Court **explicitly** instructed Defendants to set out the steps they had taken to obtain relevant documents* from their agents and other sources within their control (*e.g.*, attorneys, accountants, banks, etc.) gives the Court all of the information it needs to fairly resolve Plaintiffs' motion.

(Id. at 3) (emphasis added). Plaintiffs then sought leave to file a Motion for Sanctions. (ECF No. 84). Defendants opposed the request and the Court held an in-person conference on January 11, 2017. (ECF Nos. 84-86).

After having holding a conference with the parties, Judge Dickson struck Defendants' Answer. (ECF No. 87). However, Judge Dickson did not permit Plaintiffs to file a Motion for Default Judgment as to allow Defendants another opportunity to cure the discovery deficiencies. (Id.). Additional correspondence was forwarded to the Court, causing Judge Dickson to Order a settlement conference for April 18, 2017. (ECF No. 94). Subsequently, Judge Dickson reviewed the parties' submissions and determined that Plaintiffs were entitled to file a Motion for Default

Judgment on or before May 2, 2017. (ECF No. 95). This Order by Judge Dickson took into account that *"Defendants have not cured their **longstanding discovery deficiencies** despite this Court's Order dated January 17, 2017."* (Id.) (emphasis added).

Accordingly, on May 1, 2017, Plaintiffs filed their Motion for Default Judgment. (ECF No. 96). Defendants opposed Plaintiffs' Motion and Cross-Moved to Vacate Default. (ECF No. 97). Plaintiffs replied to the initial Motion for Default Judgment and opposed vacation of default. (ECF No. 98). Thereafter, Defendants submitted an improper sur-reply. (ECF No. 99). In light of Defendants' Cross-Motion to Vacate Default, this Court administratively terminated Plaintiffs' Motion for Default Judgment without prejudice, pending the resolution of Defendants' Motion. (ECF No. 102).

On August 30, 2017, Judge Dickson denied Defendants' Motion to Vacate Default and permitted Plaintiffs to re-file their Motion for Default Judgment. (ECF No. 103). Therein, Judge Dickson recounted the long history of the discovery dispute between the parties. (Id.). Specifically, Judge Dickson recalled how His Honor required Defendants to provide various discovery to Plaintiffs on or before February 13, 2017. (Id. at 2). Additionally, Judge Dickson noted "Defendants do not contend that anything has changed since this Court entered its April 8, 2017 Order ... Rather, Defendants argue, *as they did in their March 3, 2017 submission*, ... that regardless of their earlier, dilatory conduct, further sanctions would be inappropriate as Defendants have complied with their discovery obligations since January 2017." (Id. at 3). Nonetheless, Judge Dickson found that "Defendants' recent discovery efforts [were] insufficient." (Id.). Judge Dickson went on to itemize a few examples of Defendants' failing efforts to comply with their discovery obligations. (Id. at 3-4). Moreover, Judge Dickson found that "while Defendants made

modest revisions to their interrogatory responses, their written discovery responses *are still patently insufficient*." (Id. at 3). Accordingly, Judge Dickson found that there was no good cause to vacate default, and permitted Plaintiffs to refile their Motion for Default Judgment. (Id.).

## II. **LEGAL STANDARD**

Default judgment is governed by Federal Rule of Civil Procedure 55. Rule 55(a) provides as follows: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Thereafter, the plaintiff may seek the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2)." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citation omitted). The consequence of the entry of default judgment is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Entry of a default judgment is left primarily to the discretion of the district court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Before imposing a default judgment, district courts must make factual findings as to: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Brady*, 250 F.R.D. at 177 (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) ("[W]e have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment.")). If the damages are not for a sum certain, or for a sum which can by computation be made certain, the

"court may conduct such hearings or order such references as it deems necessary and proper." *Comdyne I*, 908 F.2d at 1149 (citing Fed. R. Civ. P. 55(a) and (b)).

### III. ANALYSIS

Plaintiff moves for default judgment for the following claims: Count II – Default Judgment against all defaulting Defendants for violation of the New Jersey Insurance Fraud Prevention Act; Count V – Default Judgment against Defendants Medical & Molecular Imaging Inc., Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, and Diagnostic Imaging Affiliates LLC for common law fraud; Count VI – Default Judgment against Defendants Medical & Molecular Imaging Inc., Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, and Diagnostic Imaging Affiliates LLC for unjust enrichment; Count IX – Default Judgment against American Imaging of Edison LLC, Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, and Diagnostic Imaging Affiliates LLC for common law fraud; Count X Default Judgment against American Imaging of Edison LLC, Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, and Diagnostic Imaging Affiliates LLC for unjust enrichment; Count XIII - Default Judgment against American Imaging Center of West Orange LLC, Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, and Diagnostic Imaging Affiliates LLC for common law fraud; Count XIV - Default Judgment against American Imaging Center of West Orange LLC, Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, and Diagnostic Imaging Affiliates LLC for unjust enrichment; Count XVII - Default Judgment against American Imaging Center of Wayne Inc., Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, and Diagnostic Imaging Affiliates LLC for common law fraud; Count XVIII - Default Judgment against American Imaging Center of Wayne Inc., Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, and Diagnostic Imaging Affiliates LLC for unjust enrichment; Count XXI - Default Judgment against The Imaging Center of

Montville LLC, Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, Salman Siddiqui, and Diagnostic Imaging Affiliates LLC for common law fraud; and Count XXII - Default Judgment against The Imaging Center of Montville LLC, Rehan Zuberi, Nawab H. Zuberi, Humara Pachara, Salman Siddiqui, and Diagnostic Imaging Affiliates LLC for unjust enrichment. (Pl. Mov. Br. 2-3).

Here, the Court finds that Plaintiffs are entitled to default judgment as to all of the aforementioned claims. Preliminarily, the Court finds that Defendants' Opposition to this Motion is practically identical to their submission in favor of vacation of default. (*Compare* ECF No. 97, *with* ECF No. 106). These arguments were explicitly rejected by Judge Dickson in His Honor's August 8, 2017 Order and Opinion. (ECF No. 103). Defendants did not move for reconsideration of said ruling nor did they seek appeal to this Court. *See* L. Civ. R. 72.1(c)(1). Accordingly, Judge Dickson's findings and rulings are now the law of the case and this Court will not revisit same. *See Arizona v. California*, 460 U.S. 605, 618-19 (1983).

Moreover, Plaintiffs' Complaint sufficiently states a claim for violations of the New Jersey Insurance Fraud Prevention Act ("NJIFPA"), as well as claims of common law fraud and unjust enrichment. A violation of the NJIFPA occurs when a person or entitiy:

> [p]resents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim.

N.J.S.A. 17:33A-4(a)(1). To state an NJIFPA claim "[a] [p]laintiff must essentially [allege] (1) knowledge, (2) falsity, and (3) materiality." *Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program*, 2015 WL 8345537, at *4 (D.N.J. Dec. 8, 2015). "Unlike common law fraud,

proof of fraud under the [NJIFPA] does not require proof of reliance on the false statement or resultant damages . . . nor proof of intent to deceive." *Id.* (citation omitted). Thus a claim under the NJIFPA requires much less thorough pleading than a claim for common law fraud. New Jersey's Supreme Court has held "that '[courts] must construe the [NJIFPA's] provisions liberally to accomplish the Legislature's broad remedial goals.'" *Lincoln Nat. Life Ins. Co. v. Schwarz*, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010) (quoting *Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163 (N.J. Sup. Ct. 2006)). "Any insurance company damaged as the result of a violation of any provision of [the NJIFPA] may sue [] in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit[,] attorney's fees . . . [and] treble damages[.]" N.J.S.A. 17:33A-7(a)-(b).

To satisfy the first prong, a plaintiff must allege that the defendants had knowledge of the fraud. *LM Ins. Corp. v. All-Ply Roofing Co.*, 2017 WL 1323196, at *5 (D.N.J. Apr. 5, 2017). A defendant who had knowledge of the false bill satisfies the second element of a *prima facie* claim under the NJIFPA. *See Va. Sur. Co. v. Macedo*, 2011 WL 1769858, at *16 (D.N.J. May 6, 2011) (holding that a defendant who "prepare[s] a writing containing materially false statements . . . in order to support [its] insurance claims" is sufficient to assert a claim pursuant to the NJIFPA). Finally, the third element is satisfied when a plaintiff asserts that a defendant's misstatements were material. *See Horizon, supra* at *4.

Here, Plaintiffs' Complaint contains all the necessary elements to assert a claim under the NJIFPA. Indeed, Plaintiff asserts that the Zuberi Defendants were aware that Defendant Rehan Zuberi was prohibited to own or operate any ambulatory care facilities due to criminal convictions stemming from a New Jersey Medicaid Fraud Act case. (Compl. ¶ 68). However, despite this

restriction, the Zuberi Defendants created "a secret scheme whereby – in exchange for compensation from [Defendant Rehan] Zuberi – [the Zuberi Defendants] agreed to falsely represent in corporate filings and [New Jersey Department of Health and Senior Services] applications that they owned and controlled the [various named corporate entities], while in actuality ceding true ownership" to Defendant Rehan Zuberi. (Id. ¶ 69). The scheme ultimately came to light in 2014 and the Individual Named Defendants were arrested. (Id. ¶¶ 98-99). Plaintiffs assert that, in order to support the fraudulent charges, Defendants "systematically submitted or caused to be submitted hundreds of [Health Care Financing Administration] forms and treatment reports ... for the Fraudulent Services for which Defendants were not entitled to receive payment." (Id. ¶ 106).

The above cited allegations are only an example of the numerous allegations asserted by Plaintiffs in connection with the NJIFPA claim. The Court finds that Plaintiffs' Complaint contains far more than sufficient allegations to support this claim. This is because, as noted above, and as further detailed in the Complaint itself, Plaintiffs have sufficiently alleged knowledge of the fraudulent scheme, thereby satisfying the first prong of the claim. Plaintiffs satisfy the second prong by pointing to the fraudulently submitted bills. Finally, Plaintiffs satisfy the third prong by alleging that Defendants made material misrepresentations in their bills and treatment reports. Hence, Plaintiffs have sufficiently alleged a claim under the NJIFPA.

This Court also finds that, consistent with New Jersey law, Plaintiffs are entitled to treble damages on their NJIFPA claim. Indeed, N.J.S.A. 17:33A-7(b) provides that a successful plaintiff is entitled to recover treble damages. *See* N.J.S.A. 17:33A-7(b) ("A successful claimant under subsection a. shall recover treble damages if the court determines that the defendant has engaged

in a pattern violating this act."); *see also Allstate Ins. Co. v. Greenberg*, 376 N.J. Super. 623, 640 (N.J. Super. App. Div. 2004) (finding that a plaintiff is entitled to treble damages on an NJIFPA claim when a defendant engaged in a pattern of fraudulent behavior). Here, Plaintiffs' Complaint asserts that, not only did Defendants violate the NJIFPA, they did so in a systematic pattern over the course of nearly 10 years. This conclusion is further supported by the fact that Defendant Rehan Zuberi was previously barred from owning or operating any ambulatory facilities as a result of his prior criminal conduct. (Compl. ¶ 68). However, despite this restriction, Defendant Rehan Zuberi, along with the other Defendants, decided to engage in an additional fraudulent scheme. (Id. ¶¶ 68-86). Hence, this Court finds that Plaintiffs have sufficiently pled a pattern of fraudulent activity and that such allegations warrant the award of treble damages.

The same is true for Plaintiffs' common law fraud. To state a claim for common law fraud, a plaintiff must plead sufficient facts that raise a plausible inference that: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting in damages." *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 62045, at *53-54 (D.N.J. May 3, 2012) (Linares, J.) (citing *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610 (N.J. Sup. Ct. 1997)). Here, the allegations supporting Plaintiffs' NJIFPA claims also support their common law fraud claims against the various Defendants. Indeed, as discussed, Plaintiffs assert that Defendants knowingly made material misrepresentations when they submitted fraudulent bills and treatment reports. Those bills and treatment reports were submitted with the intention that Plaintiffs rely, and make payment, upon same. Finally, Plaintiffs;

damages are apparent based on the fact that they paid insurance benefits for fraudulent claims. Thus, Plaintiffs' common law fraud claims are sound.

Lastly, Plaintiffs have asserted valid claims for unjust enrichment. To succeed on a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. Sup. Ct. 1994); *see also Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108 (N.J. Super. Ct. App. Div. 1966). Additionally, for an unjust enrichment claim to succeed, there must be a showing that "the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Callano*, 91 N.J. Super. at 109; *see also VRG Corp.*, 135 N.J. at 554.

Again, the allegations in Plaintiffs' Complaint are sufficient to support the claims of unjust enrichment asserted therein. As discussed above, Plaintiffs have asserted that Defendants received a benefit by filing false and fraudulent bills and treatment reports with Plaintiffs. Moreover, the Complaint is replete with allegations of benefits conferred upon Defendants by Plaintiffs. (*See, e.g.*, Compl. ¶¶ 145-48, 170-73, 249-52). These benefits were conferred upon Defendants by Plaintiffs unjustly, as Plaintiffs presumed they were paying for services rendered and receiving truthful treatment reports. Hence, Plaintiffs have sufficiently asserted claims for unjust enrichment against the defaulting Defendants.

Having found each claim sufficient, the Court now turns to the balance of the default judgment analysis. In doing so, this Court first finds that Defendants do not have a meritorious defense. This conclusion is primarily supported by the fact that Defendants do not have a viable

answer in this case. *See Gah Shi Lu v. Weinberger*, 2015 WL 4743925, at *2 (D.N.J. Aug. 11, 2015). As a matter of fact, Judge Dickson has already found that Defendants do not have a meritorious defense in his August 30, 2017 Order and Opinion, and this remains the law of the case. (ECF No. 103) (quoting *Doe v. Hesketh*, 828 F.3d 159, 175 (3d Cir. 2016) (additional citations omitted)). Moreover, Defendants' Opposition is nothing more than a re-argument of their Motion to Vacate Default, which the Court has already rejected. Thus, this Court finds that Defendants have not advanced any meritorious defense that would prohibit the entry of default judgment against them.

Additionally, as Judge Dickson has found, the reason for Defendants' stricken answer is simply due to Defendants' own culpable conduct. (ECF No. 103) ("the 'culpable conduct' factor actually weighs even more strongly in favor of maintaining the defaults *given that Defendants' discovery deficiencies persist several months*" after Defendants were ordered to produce the various demanded discovery). Indeed, Defendants were given more than ample opportunity to cure their discovery deficiencies to no avail. In other words, Defendants have no one to blame but themselves. Accordingly, the culpable conduct factor greatly weighs in favor of granting default judgment in favor of Plaintiffs.

Finally, Plaintiffs would be greatly prejudiced if default judgment is not granted in their favor. This is because, as Plaintiffs correctly note, Plaintiffs would be left without any recourse or remedy. Indeed, at this juncture in the litigation, Plaintiffs have been patiently awaiting discovery and it is apparent to both this Court, as well as Judge Dickson who has closely managed this case, that said discovery is not forthcoming. Therefore, anything short of default judgment leaves Plaintiffs litigating a case with partial information which would be insufficient to fully

prosecute this matter. Thus, based on the aforementioned factors, this Court finds that default judgment is appropriate.

The Court also finds that no hearing is required and Plaintiffs seek a sum certain. This conclusion is based on Plaintiffs' submission, which explains that the total amount improperly paid to Defendants was $858,654.49. (ECF No. 96-4). Plaintiffs explain that this number was derived from their own tax identification number search, and is supported by copies of fraudulent bills. (ECF No. 96). Additionally, Plaintiffs provide a specific breakdown of how the funds were distributed to the various corporate Defendants. (ECF No. 96-4 ¶ 5-6). Accordingly, the Court is satisfied that Plaintiffs are entitled to default judgment for a sum certain and that no further proceedings are required.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Default Judgment is hereby granted. An appropriate Order and Judgment accompany this Opinion.

DATED: October 23, 2017

JOSE L. LINARES
Chief Judge, United States District Court